# Bradshaw *v*. Gunter, Executor.

### *Bill in Equity to cancel Cloud on Title.*

1. *Contracts; construction of.*—In an action of ejectment the plaintiff, G., recovered a judgment against A., defendant, for the lands sued for. From this judgment A. appealed to the Supreme. Court. Pending the appeal, B., A's attorney, advanced to E. F. G., for whom G. was trustee under a deed of trust, certain money, and by the terms of the written contract evidencing this advance, the sum so paid was "to stand and operate and be the full consideration to be paid said E. F. G. and others and their grantees for their interest and claim on the lands in the ejectment suit" (which they were to quitclaim and convey to A.) "and upon the contingency and in the event that their recovery of said lands be upheld on appeal and the judgment in said ejectment suit be sustained." The agreement also provided that "if said judgment be reversed

[Bradshaw v. Gunter, Executor.]

on said appeal and settled in favor of A., or if, without such reversal, the said A., by legal or equitable proceedings, establishes its title against that here contracted to be sold, then and in that event the said note and mortgage" (given to evidence and secure the money so furnished by B.) "shall become due and payable and be of full force and virtue," etc. *Held*: That, under the agreement, if the case were affirmed on the appeal and the title adjudicated to belong to G., the money was not to be repaid; that if the judgment were reversed in such way as to settle the title against G., the note and mortgage were to stand and become due; and that, if reversed in such sort as to leave the title not adjudicated, it was not contemplated by such agreement that such reversal would settle the title.

2. *Same; prevention of performance of contract, effect of; estoppel.*
B., attorney for A., defendant in an ejectment suit which was pending in the Supreme Court on appeal, agreed with the plaintiff therein, G., (or persons representing the plaintiff), to furnish them certain money, which was secured by note and mortgage upon other land, said money not to be repaid if the title to the land in suit was adjudicated to G. by an affirmance of the judgment, but the same to be a loan, and the mortgage to stand as security therefor, if the case were reversed and title settled in A.'s favor. In consideration of said sum so advanced G. was to convey and did convey to A. her right and interest in said land in suit. After the reversal of the ejectment suit, but not upon its merits, B., as attorney for A., interposed therein in the lower court a plea since the last continuance, setting up as a bar to the further maintenance of the suit, the conveyance to A. by plaintiff. This plea was proven and judgment rendered thereon in favor of A. *Held*: That by so doing B. elected to claim G.'s title for A. as on a purchase, and thereby waived and estopped himself to claim any condition upon which he had the right to reject the conveyance by G. and reclaim the purchase money as a loan, and that the mortgage would be cancelled as a cloud on G.'s title to the land included therein.

3. *Contract: preventing performance of; liability.*—One who prevents performance or happening of a condition precedent, upon which his liability, by the terms of a contract, is made to depend, cannot avail himself of its non-performance.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. W. L. PARKS.

16

[Bradshaw v. Gunter, Executor.]

This was a bill filed by W. A. Gunter, as executor under the will of E. F. Gunter, to cancel as a cloud on complainant's title a certain mortgage executed to Caldwell Bradshaw by complainant's testatrix and complainant.

The averments of the bill and answer and the facts in evidence are shown by the opinion.

From a decree in favor of complainant, defendant appeals and assigns the rendition thereof as error.

JAMES E. WEBB, H. C. SELHEIMER and CALDWELL BRADSHAW, for appellants.—(1). The contract must be construed by the court, and its construction must be determined solely by its language; and no parol evidence, or averment made by complainant, can inject into the contract any construction or meaning other than that which its words clearly import.—*Watson v. Curry,* 112 Ala. 442; *Drennen v. Satterfield,* 119 Ala. 84; *Moragne v. Richmond Machine Works,* 124 Ala. 537.

(2). The mortgage of Sewell to the Mortgage Company was valid.—*American Freehold Land Mortgage Co. v. Sewell,* 92 Ala. 163.

(3). The only question before the court on the appeal of the ejectment suit was whether or not the dismissal of the chancery cause as to Sewell operated, under Rule 31, as an adjudication of the title in Sewell, which was decided against Gunter by the decision of the Supreme Court in the ejectment case.

(4). Wherever the word "settled" is used in the agreement, it has immediate reference to the *judgment* in ejectment being settled, and not the *title;* and wherever the word "established" is used, having reference to the title, it is used in connection with the words "as aforesaid," meaning established by the judgment of reversal and not in some other way and some other suit. The parties to the agreement knew that the mortgage company derived its title from the mortgage which had been declared valid, and not from the confirmation of the foreclosure sale, and that the question presented by the appeal was, not whether the decree of the chancellor confirming the mortgage sale was an adjudication of the

[Bradshaw v. Gunter, Executor.]

title in favor of the mortgage company, but whether the dismissal of the bill as to Sewell was an adjudication of the title in his favor.   Both knew that the Supreme Court would not declare the title to be in either party, but would decide only that the dismissal of the chancery cause as to Sewell was or was not an adjudication of the title in Sewell.   Both knew that the effect of a reversal would be to remand the cause, for a new trial before a jury; that ejectment is a possessory action and that a judgment therein does not settle the title except indirectly.   Hence, the parties could not have had in mind, that, in event of a reversal, the title should be settled by the appeal as a condition precedent to the advancement being considered a loan.

GUNTER & GUNTER and W. L. MARTIN, *contra.*—(1). In construing contracts the whole *res gestae* must be considered, together with the attending circumstances and situation of the parties.—1 Brick. Dig., 386; 3 Brick. Dig., 147, § 87.

(2). In construing a contract, which is partly written and partly printed, that which is written is to have the greater weight.—*Bolman v. Lohman,* 79 Ala. 67.

(3). Prominence and control shall be given to those clauses which are shown to have received particular attention.—*Farmers Bank v. Hale,* 59 N. Y. 53; Endlich on Interp. of Stat., § 185; 11 Cent. Digest, p. 728; Am. Dig. (Century ed.), §§ 736, 765; 30 L. R. A. 491.

(4). A party may waive a condition for his own benefit, and having done so can no longer insist on it. *Shutte v. Thompson,* 15 Wall. 159; Am. Dig., Vol. 11, (Century Ed.), title "Contracts," §§ 1038, 1039, 1040.

(5). Bradshaw, by preventing a trial on the merits of the respective titles, elected to waive all contingencies whereby he might reject the purchase.

HARALSON, J.—The proper construction of the contract between the complainant, W. A. Gunter, as executor, and Caldwell Bradshaw, the defendant, of date the 23d of December, 1892, attached to the bill as exhibit A, is the question before us for consideration.

[Bradshaw v. Gunter, Executor.]

At the time of the execution of said agreement, as is shown therein, a suit in ejectment had theretofore been instituted in the circuit court of Elmore county, by Charles P. Gunter, who held the title to the lands sued for, in trust for E. F. Gunter, complainant's testatrix, in which ejectment suit a judgment had been rendered in favor of the plaintiff therein, and an appeal had been taken to the Supreme Court by the defendant, the American Freehold Land Mortgage Company, on bill of exceptions reserved by it, to reverse said judgment, and said appeal was then pending in the Supreme Court undecided. For reasons satisfactory to them, the said Bradshaw loaned to the complainant's testatrix and himself individually, the sum of $1,732.80, evidenced by their individual note for that sum, bearing interest at 8 per cent. from the first day of December, 1892; and on the 11th of January, 1893, said Gunter and wife executed to said Bradshaw a mortgage on lands in Autauga county, known as the Harris place, to secure the payment of said note, according to the conditions specified in their said agreement A. The consideration for said agreement, as specified therein, was the said loan so secured, "and [quoting the agreement] in further consideration of the satisfaction of said loan, they have agreed to quit-claim, at the request of said Bradshaw, the tract or parcel of land situated in Elmore county, known as the W. B. Sewell tract, lately mortgaged by W. B. Sewell and wife to the American Freehold Land Mortgage Company of London, Limited, conveying to it all the right, title, interest, claim and demand of W. H. Whetstone and wife, or their grantees [one of whom was the said C. P. Gunter, trustee, as aforesaid], which they acquired by deed or otherwise from W. B. Sewell and wife, which was executed subsequent to the said mortgage [to said company] so as to vest in said company all right, title and possession in or to said lands acquired under, by or through said title so to be quit-claimed, * * * and also to mark satisfied the judgment recently rendered in ejectment suits for the possession of said lands in the circuit court of Elmore county in the suits of Doe *ex dem.* Whetstone and others against said

company on the payment of the costs thereof." The bill alleges that "the said E. F. Gunter caused the said C. P. Gunter to convey to said corporation the title so held by him, and the deed for the same was delivered to said Bradshaw, and the said Bradshaw and E. F. Gunter, with your orator as husband of said E. F. Gunter, on the 23rd day of December, 1892, entered into the written contract, a copy of which marked exhibit A, as a part of this bill, is hereto attached to carry out said agreement." This consideration, as will appear from what follows, was not to be immediately performed, but was to be postponed and made contingent on the happening of some future event.

The said agreement further specifics: "The said $1,732.80, as evidenced by said note and mortgage, is to stand and operate and be the full consideration to be paid to the said W. A. Gunter, W. H. Whetstone and their grantees for their interest and claim in and to the Sewell lands, *and upon the contingency and in the event that their recovery of said lands be upheld on appeal and the judgment in said ejectment suit be sustained.*" (Italics ours). Two other conditions are added, viz.: "but (1st) if said judgment be reversed on said appeal, and settled in favor of the American Freehold Land Mortgage Company of London, Limited, or (2nd) if without such reversal, the said American Freehold Land Mortgage Company, by legal or equitable proceedings, establishes its title against that here contracted to be sold, then and in that event the said note and mortgage shall become due and payable and shall be of full force and virtue, and the said debt thereby contracted by the said W. A. Gunter and E. F. Gunter shall be paid on demand, or in three months thereafter. The intent and purpose of this agreement being that the said $1,732.80 is to operate and be the full consideration of the purchase money of the said title of the said W. H. Whetstone, or his grantees, by the affirmance of said judgment; but in the event that the title to said lands should be established in the American Freehold Land Mortgage Company of London, Limited, by the reversal of said judgment, then the said sum of $1,732.80 is to be considered in all respects as it is in fact a loan of money

to the said E. F. Gunter, and is to be repaid as herein provided. * * The object and purpose of this contract is to settle and quiet the title and possession and all controversies, so far as the peaceable possession and use of the said W. B. Sewell lands in the American F. L. M. Company, Limited, and to indemnify the said W. A. Gunter, W. H. Whetstone and others in the event their title to said lands should be established as aforesaid." Interpreted according to its plain meaning, the condition as to the note and mortgage remaining of full force and virtue, applies alike to the conditions noted above as 1st and 2nd.

From these provisions of the agreement, it is manifest, that the contemplation of the parties in its execution, upon which they made the said loan to be paid or not, was the adjudication in the pending suits or by other legal or equitable proceedings, of the title to said lands, to the said E. F. Gunter or to the Loan Company. If the title was adjudicated to belong to Gunter, the loan was not to be repaid, or, if to the company, that it should be repaid, and the mortgage to secure it, should stand. It was expected that the decision of the Supreme Court, on appeal in the ejectment suit. would settle the question of title, and the controversy ended. If the judgment in that case had been affirmed, that would have been an adjudication in favor of Gunter as to title. If reversed, and the reversal was such as that the question of title was not adjudicated, but left undisposed of, it could scarcely be said, that they intended such a reversal should have the effect of settling the question of title. The language of the agreement is,—to re-quote it,—"In the event that their [the Gunter's] recovery of said lands [in said ejectment suit] be upheld on appeal and the judgment in said ejectment suit be sustained," the said $1,732.80, and the note and mortgage to secure it, was to stand and operate and be the full consideration to be paid to the said Gunters for their quit-claim. "But if said judgment be reversed on appeal and settled in favor of the American F. L. M. Company of London, Limited," then, and in that event, said note and mortgage were to become due and payable. The language of the last condition is, "reversed on appeal and settled."

The judgment was not only to be reversed, but something was to be settled by the reversal, and that was the title to the lands in question. The settlement of the title in the pending litigaion on appeal, was the thing and the only question on which the parties were at variance, and which they desired settled, and upon the settlement of that question, depended the indebtedness of the Gunters, or the discharge of their note and mortgage.

It is stated in the agreed statement of facts: "It is admitted that upon the record and upon the trial of said appeal in said Supreme Court, from said judgment in ejectment, the only question which was presented by said record and argued before said Supreme Court. was the one,—whether or not the proceedings which were had in said Chancery Court on Sept. 14, 1891, and Sept. 15th, 1891, was, under rule 31 of chancery practice, equivalent to a dismissal of said cause upon the merits, adjudicating the titles to said lands."

In that decision by the Supreme Court, made a part of the agreed statement of facts,—one judge being disqualified and the other four being equally divided on the question at issue,—it appears that the only question considered was the one presented and argued, and the decision was, that the decree of said Chancery Court appealed from, was not a dismissal upon the merits of the cause adjudicating the title to said lands. The question of title was not passed on at all, but was left open for further adjudication in said ejectment suits. The effect of the decision was, while the cause was reversed and remanded, that said ejectment suits stood for trial in said Circuit Court unaffected as to the question of the title to said lands by the dismissal of said chancery proceedings against said Sewell and wife. If the decision had held that said dismissal was upon the merits of the cause, adjudicating the title to said lands, the only question involved in said ejectment suit,—the title to the lands,—would have been determined, and the judgment therein appealed from would have been affirmed. But it was reversed, and there was no decision on the merits.

[Bradshaw v. Gunter, Executor.]

It is averred in the bill and admitted in the answer, that at the first term of the circuit court, after said cause had been remanded thereto by the Supreme Court, the said Loan Company, at the instance and by the procurement of said Bradshaw, who still represented it as agent and attorney, duly interposed in said ejectment suits a plea of *puis darrein continuance,* setting up as a bar to the further maintenance of said suits, the conveyance to it of the said lands by the plaintiff therein, the said C. P. Gunter, alleging that Sewell had conveyed to Whetstone and he to Wilson and he to C. P. Gunter, and he to the said company. On the trial of said cause the defendant proved the truth of said plea, by exhibiting and proving the chain of title, and thereupon requested the court in writing to direct the jury to find a verdict for defendant, which charge, was given, and a verdict was accordingly found and a judgment rendered in favor of defendant in said suits, all of which, as alleged, was done at the instance and by the consent of the said Bradshaw, who surrendered the said title to said company.

In so doing the said Bradshaw and said company, deprived the plaintiff in said suit from trying therein the question of title to said lands, and of complying with the condition in said agreement to mark the judgment in said ejectment suit satisfied. This was an election by Bradshaw to claim the Gunter title for his client as on purchase, and he thereby waived and estopped himself to claim any condition upon which he had the right to reject the conveyance by Gunter and reclaim the purchase money as a loan. Or, in other words, this was the taking over by the company from Gunter of the consideration upon which this mortgage on the Harris place was to be cancelled, and estopped Bradshaw to deny the right of complainant to have the same cancelled according to the agreement.

There was no resistance to be made to the plea, though it violated the intention of the parties in execution of said contract, if not its very letter.—*Lord v. Tyler,* 14 Pick. 156; *Jones v. Walker,* 13 B. Monroe, 163, s. c. 56 Am. Dec. 557; *Cape Fear, etc. Nav. Co. v. Wilcox,* 7 Jones' Law, 481, s. c. 78 Am. Dec. 260.

[Thompson & Bailey v. Damskibsaktieselskabet Habil.]

The opinion and decree of the learned chancellor is in accordance with the conclusion we reach in the construction of said contract, and his decree according to the prayer of the bill is affirmed.

Affirmed.